IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DR. SHAMS JAFFER | ) |
| Plaintiff, | ) |
| v. | ) |
| BOARD OF TRUSTEES OF COMMUNITY COLLEGE DISTRICT #508 d/b/a CITY COLLEGES OF CHICAGO, GEORGE BART, LYNN WALKER | ) |
| Defendant. | ) |

**COMPLAINT FOR DAMAGES**

Plaintiff, DR. SHAMS JAFFER, ("Dr. Jaffer"), an Illinois resident, by her attorneys, Rab & Khan, LLP, for her complaint against defendants, GEORGE BART ("Bart"), LYNN WALKER ("Walker"), and BOARD OF TRUSTEES OF COMMUNITY COLLEGE DISTRICT #508, d/b/a CITY COLLEGES OF CHICAGO ("City Colleges"), states as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1343(a)(4).

2. Venue is proper pursuant to 28 U.S.C. §1391(b) as all parties are domiciled in the district and a substantial part of the events giving rise to the claims occurred in this district.

**PARTIES**

3. Plaintiff Shams Jaffer, Ph.D. is an Associate Professor in the Department of Physical Science and Engineering at Truman College. She came to the United States from

Pakistan on a Fulbright Scholarship and has pursued a career in academia. After receiving her Ph.D. from American University in Washington D.C., she served as a full-time lecturer at Howard University, a research associate at University of Chicago, and Assistant Professor at Truman College until she was promoted to her current position. She is a practicing Muslim and currently resides in Chicago, Illinois.

4.  Defendant Bart is and was at all times hereto, the Chairman of the Physical Science and Engineering Department ("Department") at Truman College and in a supervisory position over Dr. Jaffer. Bart is and was at all times hereto an agent of Truman College and the City Colleges of Chicago.

5.  Defendant Walker is the Interim President of Truman College and in a supervisory position over Dr. Jaffer. Walker is and was at all times hereto an agent of Truman College and the City Colleges of Chicago.

6.  Defendant City Colleges is a public community college district, organized under the laws of the State of Illinois. Truman College is one of seven colleges operating under the City Colleges. City Colleges and Truman College are the employers of Dr. Jaffer. City Colleges has over 500 employees.

7.  City Colleges and Truman College exercised supervisory authority over and made hiring, promotion, disciplinary and other employment decisions concerning Dr. Jaffer and other employees at all times hereto.

## BACKGROUND FACTS

*Dr. Jaffer's Position at Truman College*

8.	Dr. Jaffer is a tenured Chemistry professor at Truman College. Dr. Jaffer holds an undergraduate degree and doctorate in Chemistry from American University. She was hired by City Colleges in 1978 as an Assistant Professor in Chemistry. Since 1978, she has faithfully served Truman College as one of the only faculty members with a doctorate. She has earned a record of excellence without blemish.

9.	Based on her qualifications and professorial contributions, Dr. Jaffer obtained tenure in January 1981.

10.	As a senior faculty member, Dr. Jaffer has long advocated on behalf of minority faculty in the Department. She has been a strong voice against the hiring practices of the Department headed by Bart. When highly qualified minority faculty candidates were not considered, Dr. Jaffer would alert Bart who would routinely dismiss her concerns. Similarly, in June of 2004, when Dr. Jaffer approached the President of Truman regarding these hiring practices, she was ignored.

11.	As is turns out, her race and religion became the basis for the defendants' systematic mistreatment of Dr. Jaffer.

*Dr. Bart's Personal Crusade Against Dr. Jaffer*

12.	Defendant Bart has been the Chairman of the Physical Sciences and Engineering Department at Truman College for over twenty years. During that period, he has always been Dr. Jaffer's direct supervisor. Bart has used this role to systematically discriminate against Dr. Jaffer because of her race and religion. Bart has, on numerous occasions, mistreated Dr. Jaffer causing humiliation along with severe mental and physical damage.

3

13. Bart's mistreatment has been both severe and continuous and has created a hostile work environment.

14. Bart's mistreatment began even before Dr. Jaffer was hired. He strongly protested hiring Dr. Jaffer despite her obvious qualifications. Dr. Jaffer was hired only after a long process which ended when the since departed President personally supported the hire because of Dr. Jaffer's obvious qualifications.

15. Since Dr. Jaffer was hired, Bart was determined to make her feel, through words and actions, unwanted due to her religion and race. His actions resulted in adverse employment actions and created a hostile work environment.

*Specific Instances Of Mistreatment*

16. For the past 15 years, Bart singled Dr. Jaffer out through his handling of alleged student complaints against her. As a safeguard against any unfair and unsubstantiated complaints against faculty, the Community College Teachers Union has instituted a long-standing policy that all student complaints made to the administration must not be given anonymously. This policy has always been strictly followed by the Department except with respect to Dr. Jaffer. Bart on numerous occasions harassed Dr. Jaffer by informing her that students have complained about her professionalism and ability to teach. Against union policy and despite Dr. Jaffer's demands, Bart never informed Dr. Jaffer of the students' identities. It became apparent that the alleged complaints were fabricated and designed to harass.

17. Bart's violation of the long-standing policy was because of Dr. Jaffer's race and religion. Aside from the fact that Dr. Jaffer was singled out, Bart made his motivation clear when

on or about the Spring of 2003 Dr. Jaffer asked Bart about how she should deal with a student who had been caught cheating in her class. Bart remarked that she should "chop off the hands of the girl…as Islam teaches."

18. On another equally offensive occasion, Bart demonstrated his prejudice towards Muslims when he suggested to Dr. El-Maazawi, a Muslim Professor in the Department, that he wear an I.D. because he looks like a terrorist. Needless to say, no other faculty member faced such degrading treatment.

19. On or about the Spring of 2007, Bart questioned Dr. Jaffer as to the hiring of a qualified Muslim-American professor to teach a Chemistry course and stated that, "Oh yes, you give money to these people and they will send home that money and they will buy guns and will shoot people and will get involved in terrorist acts."

20. On or about March 2008, Bart asked Dr. Jaffer if she would like to grade an exam given by Dr. El-Maazawi because a student's parent had requested a regrade. When Dr. Jaffer said that she would grade the exam, Bart became angry and stated that he "knew [Dr. Jaffer] would agree" to grade the exam and then did not allow Dr. Jaffer to grade the paper because she was Muslim like El-Maazawi and therefore she could not be trusted.

21. In addition to these specific instances, Bart routinely treated Dr. Jaffer differently due to her race and religion. He failed to inform her of departmental meetings and then forced her to take sick leave if she missed a Department meeting when other faculty members were never required to do so. In addition, Bart interfered with Dr. Jaffer's basic teaching conditions by casting doubts on her grading decisions.

*Dr. Bart's Discriminatory Hiring Process*

22.     Bart's discriminatory actions toward Dr. Jaffer are better understood in conjunction with his Department's hiring process. Bart has been the Chairman of the Department for over two decades. During that time, Bart has been on a very public mission to prevent the hiring of Muslim faculty.

23.     The longstanding policy of the Department had been that upon recommendation of a tenured faculty member, the Department would bring in a candidate for an interview.

24.     In 2004, Bart, in an effort to prevent the hiring of Muslim and other minority faculty, changed the hiring policy so that at least two faculty members would have to recommend a candidate in order to set up an interview. Bart and some of his allies within the Department made this change so they were not forced to interview candidates that were obviously more qualified but were unwanted due to their religion and race. Without having to interview these "undesirable" candidates, the Department could declare that they fairly chose between the "viable candidates" for a particular position.

25.     In early 2004, the Department was looking for a professor to teach Analytical Chemistry. Dr. Jaffer submitted the names of three separate candidates with strong educational background and teaching experience. One such candidate ("Candidate A") had a doctorate in Analytical Chemistry, was the recipient of numerous awards, and had extensive teaching experience at a major university. Another candidate ("Candidate B") also had a doctorate from the University of Illinois and had significant teaching experience at Louisiana State University and Illinois Institute of Technology. Dr. Jaffer recommended that these candidates at least be interviewed for the position.

26. Bart informed Dr. Jaffer of his ad hoc change in policy that now required more than one faculty member to approve a candidate for an interview. Bart implemented this policy because he knew that Dr. Jaffer might recommend Muslim and other minority candidates. When Bart refused to alter the policy, Dr. Jaffer pleaded with the Department to allow Candidate A or B to at least be interviewed. She pointed out that the candidates were highly qualified and would allow the Department to utilize unused, expensive teaching instruments. These requests were all denied.

27. When Dr. Jaffer pressed the faculty for the reason they did not recommend Candidate A, one faculty member could not point to a single reason except that "there was *something* about him." Another stated that they misread Candidate A's resume and was not willing to change her mind. Altogether, Bart prevented six highly qualified Muslim applicants from being interviewed under the false pretext that their resumes were undistinguished.

28. On June 7, 2004, Dr. Jaffer brought the change in hiring policy and its discriminatory intent to the attention of Truman College's senior administration, which completely ignored her serious concerns.

*City Colleges' Response To Dr. Jaffer's Complaints*

29. After years of suffering under Bart's discriminatory policies and behavior, Dr. Jaffer alerted the Vice-President of Truman College in March 2008. Consistent with Chicago Colleges' internal policies, the matter was referred to the Equal Employment Opportunity ("EEO") office within City Colleges.

30. Dr. Jaffer filed a complaint with the EEO and a hearing was held in the summer of 2008 where multiple witnesses gave testimony. After the hearing, the EEO officer sustained Dr. Jaffer's complaint and referred the matter to Defendant Walker with an instruction to remedy the situation. (EEO decision attached as Exhibit 1.)

31. Dr. Jaffer made it clear that she could no longer work in the Department with Bart. Instead of remedying the serious charges upheld by City Colleges' own investigation, Walker enlisted a third party to "mediate" the matter. This third party told Dr. Jaffer, in a very intimidating and harsh manner, that no one would believe her story and that she better get used to working under Bart.

32. Only after Dr. Jaffer called the EEO officer, did Walker, upon the officer's express direction, stop harassing Dr. Jaffer. At that point, Dr. Jaffer was forced to hire counsel who, on August 21, 2008, sent City Colleges a letter demanding that Walker and Bart stop harassing Dr. Jaffer and that Bart be removed as Chairman of the Department. These demands were again summarily dismissed by City Colleges.

33. After being made aware of the truth behind the allegations against Bart, the response by Defendants Walker and City Colleges was both overdue and inadequate.

34. Instead of being subdued by a corrective action to prevent further discrimination, Bart was further emboldened.

35. He continued to subject Dr. Jaffer to new forms of harassment. On October 28, 2008, more than four months after the City Colleges' own EEO officer declared that Bart unlawfully discriminated against Dr. Jaffer, Bart retaliated against Dr. Jaffer by berating her for

8

taking a bathroom break during a 4-hour long chemistry laboratory period. He then yelled at her when demanding that she should never go across the hall to her office for any reason during the lengthy period.

36. Dr. Jaffer has made repeated calls for Bart's removal from his supervisory position over her as Chairperson of the Department, but Truman, Walker and City Colleges have ignored her requests.

37. Because of the ongoing treatment and the lack of a corrective response, Dr. Jaffer was forced to file a charge with the Illinois Department of Human Rights and the U.S. Equal Employment Commission on December 1, 2008.

38. On June 22, 2009, a right to sue letter was issued by the Civil Rights Division of the U.S. Department of Justice.

39. In addition to Bart's actions against Dr. Jaffer, a series of adverse employment actions have been taken against Muslim faculty and administration at Truman College by Interim President Lynn Walker.

40. In December 2008, Walker terminated Dr. Pervez Rehman, another Muslim, from his position as Vice President of Truman College, even though he had been awarded the "Administrator of the Year" in 2008. Dr. Rehman was singled out because in March of 2008, he alerted the City Colleges' Equal Employment Office of Dr. Jaffer's complaints against Bart. Only after realizing that no legitimate reason existed to terminate the highly respected administrator did City Colleges rescind its termination.

41.     In early 2009, Walker terminated another Muslim, Dr. Nasrat Esbai, for voicing her support of Dr. Rehman through his struggle with City Colleges. Although numerous other faculty, staff, and administration members supported Dr. Rehman, only Dr. Esbai was terminated and forced to file a separate complaint with the EEOC. Her complaint is currently pending with the EEOC

## COUNT I

## VIOLATION OF TITLE VII OF CIVIL RIGHTS ACT OF 1964
## (HOSTILE ENVIRONMENT)

42.     Dr. Jaffer realleges and incorporates by reference Paragraphs 1-41 of this Complaint as paragraph 42 as if fully set forth herein.

43.     On December 1, 2008, Dr. Jaffer timely filed a charge of race and religion discrimination against Truman and City Colleges with the Illinois Department of Human Rights ("IDHR") and the U.S. Equal Employment Opportunity Commission ("EEOC"). (A copy of that charge is attached as Exhibit 2.)

44.     On June 22, 2009, Dr. Jaffer received a right to sue notice from the U.S. Department of Justice. (Letter attached as Exhibit 3.)

45.     Dr. Jaffer is a Muslim of South-Asian descent and therefore, a member of a minority group and protected class.

46.     City Colleges is an employer as defined by 42 U.S.C. §2000e-2.

47.     City Colleges violated Dr. Jaffer's rights by continually treating her differently than other employees because of her religion and race.

48. City Colleges also violated Dr. Jaffer's rights by subjecting her to severe and pervasive conduct that amounted to a hostile work environment altering the terms and conditions of employment.

49. When given the opportunity to correct and prevent discrimination proven by an internal investigation, City Colleges acted in a manner not reasonably calculated to end the discrimination against Dr. Jaffer.

50. The source of the discriminatory treatment, Defendant Bart, remained in a supervisory and authoritative position over her, allowing the hostile environment to remain unaltered.

51. As a direct and proximate result of the pattern and practice of disparate treatment against her race and religion, Dr. Jaffer has suffered loss of benefits, mental anguish, and other injuries.

## COUNT II
### VIOLATION OF TITLE VII OF CIVIL RIGHTS ACT OF 1964 (RETALIATION)

52. Dr. Jaffer realleges and incorporates paragraphs 1-51 of this Complaint as paragraph 52 as if fully set forth herein.

53. Defendants City Colleges, Walker, and Bart unlawfully retaliated against Dr. Jaffer after her allegations of the discriminatory practices were confirmed by an internal investigation.

54. Defendants City Colleges and Walker responded by sending a third party mediator who intimidated and discouraged Dr. Jaffer from proceeding with the complaint.

55. In addition, after being assured that she would be free of Defendant Bart's control and supervision, Dr. Jaffer was subjected to heightened scrutiny and groundless reprimands by Defendant Bart.

56. As a direct result of Defendants City Colleges, Walker and Bart's unlawful retaliation, Dr. Jaffer suffered immense emotional and physical pain and suffering.

## COUNT III

## VIOLATION OF 42 U.S.C. §1981 (HOSTILE ENVIRONMENT)

57. Dr. Jaffer realleges and incorporates paragraphs 1-56 of this Complaint as paragraph 57 as if fully set forth herein.

58. Defendant Bart intentionally discriminated against Dr. Jaffer as her supervisor on the basis of her race, ethnicity and minority status.

59. Defendants Walker and City Colleges failed to respond with sufficient corrective action and forced her to tolerate the hostile environment as a modified term and condition of employment.

60. Defendants' actions constitute racial discrimination in violation of 42 U.S.C. §1981.

61. As a result of Defendants' actions, Dr. Jaffer suffered severe mental anguish, anxiety, humiliation and emotional distress.

## COUNT IV

### VIOLATION OF 42 U.S.C. §1981 (RETALIATION)

62. Dr. Jaffer realleges and incorporates paragraphs 1-61 of this Complaint as paragraph 58 as if fully set forth herein.

63. Defendants City Colleges, Walker and Bart retaliated against Dr. Jaffer for having engaged in the protected activity of following the complaint procedure to report race discrimination against her and for opposing discrimination against other employees, in violation of 42 U.S.C. §1981.

64. Defendants' actions in intentionally retaliating against Dr. Jaffer caused her severe emotional distress, humiliation, anxiety, and mental anguish.

65. The actions of Defendants City Colleges, Truman, Bart and Walker were intentional, willful, and malicious and/or in reckless disregard for Dr. Jaffer's rights as secured by 42 U.S.C. §1981.

## COUNT V

### VIOLATION OF 42 U.S.C. §1983 (EQUAL PROTECTION RIGHTS)

66. Dr. Jaffer realleges and incorporates paragraphs 1-65 of this Complaint as paragraph 66 as if fully set forth herein.

67. Defendants Bart and Walker, in their official and individual capacity, denied public employee Dr. Jaffer her constitutional rights.

68. Defendants' acted under the color of the State as public employees and their actions were related to the performance of their public employment duties.

69. Dr. Jaffer is a member of a suspect class because of her status as a Muslim of Pakistani descent. Her 14th amendment rights to the equal protection of the law were intentionally denied by Defendants Bart and Walker through a pattern of differential treatment because of her membership in the suspect class.

70. The intentional actions of Defendants Bart and Walker directly and proximately caused Dr. Jaffer to suffer from severe emotional distress, mental anguish, humiliation and anxiety.

WHEREFORE, the Plaintiff, Dr. Shams Jaffer, prays that this court enter a judgment on her behalf and against Defendants City Colleges of Chicago, George Bart and Lynn Walker granting the following relief:

(a) Permanently enjoining the Defendants from engaging in each of the unlawful practices, policies, customs, and usages set forth herein and from continuing any and all other practices shown to be a violation of applicable law;

(b) Ordering City Colleges to remove Defendant Bart as Chairperson of the Physical Science and Engineering Department;

(c) Ordering City Colleges to remove Defendant Walker as Interim President of Truman College;

(d) Award compensatory damages;

(e) Award punitive damages;

(f) Award post-judgment interest, attorneys' fees and all costs and expenses of suit; and

(g) Such other and further relief as the Court deems appropriate.

                                        Respectfully Submitted,

                                        DR. SHAMS JAFFER

                                        ___*/s/ Zubair A. Khan*_____
                                        One of her attorneys

Zubair Khan
RAB & KHAN LLP
560 West Washington Street
Suite 240
Chicago, Illinois 60661
(312) 612-7619

15